**Kim WILLIAMS, on Behalf of Herself and Others Similarly Situated, Plaintiffs,**

**v.**

**EMPIRE FUNDING CORP., Fredmont Builders, Inc., Stanley Rabner, TMI Financial, Inc., EFC Servicing, LLC and First Bank, N.A., Trustee, Defendants.**

**No. CIV. A. 97–4518.**

United States District Court, E.D. Pennsylvania, Philadelphia Division.

Nov. 23, 1998.

---

Henry J. Sommer, Miller, Frank and Miller, Philadelphia, PA, David A. Searles, Donovan, Miller, LLC, Philadelphia, PA, for Plaintiffs.

Particia M. Hamill, Conrad, O'Brien, Gellman & Rohn, P.C., Philadelphia, PA, Paul J. Halasz, Loryn P. Riggiola, J. Michael Nolan, Jr., Joy Harmon Sperling, Pitney, Hardin, Kipp & Szuch, Florham Park, NJ, for Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

This is an action brought by named plaintiff Kim Williams on behalf of herself and others similarly situated ("plaintiffs") alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons.Stat. § 201–1 *et seq.*, as well as various common law claims. Defendants Fredmont Builders, Inc. and Stanley Rabner (collectively "Fredmont defendants") are building contractors. Defendants Empire Funding Corp. ("Empire"), TMI Financial, Inc., EFC Servicing, LLC and First Bank, N.A. (collectively "Empire defendants") are financial institutions. Before the Court is plaintiffs' motion for class certification.

## I. BACKGROUND

Plaintiffs claim that they were victims of a fraudulent scheme executed by Fredmont defendants with the knowledge and consent of Empire defendants. Under a so-called "two-contract scheme," Fredmont defendants' salespeople targeted low-income areas, going door-to-door promoting a program of home improvements and repairs which the salespeople claimed was associated with the federal government. During these home visits, the salespeople induced the homeowners to sign a "Work Order Contract" (the "sales agreement"), under which the homeowners agreed to retain Fredmont defendants to perform the home improvement work. Later, the salespeople returned to the homeowners and induced them to sign a "Home Improvement Installment Contract" (the "financing agreement"), under which the homeowners agreed to finance the debt owed to Fredmont defendants for the home improvements through Empire defendants. According to plaintiffs, at the time of the follow-up visit to the homeowners, the salespeople told them that their alternatives were either to accept the proposed financing agreement through Empire defendants, seek alternative financing through a different financing institution, or pay cash to reimburse the Fredmont defendants for their costs and "loss of profits." This menu of alternatives, according to plaintiffs, was illusory, since the homeowners, because of their financial conditions, could neither obtain alternative financing, nor raise the cash to pay the Fredmont defendants costs and "loss of profits."

According to plaintiffs, the issues in this case arise out of the "uniformly applied two contract scheme, the standard form collection letters and other collection activities, the theme of government involvement in the sales presentations and the defective repairs [made by Fredmont defendants]." Pls.' Reply at 15.

Plaintiffs seek class certification of a general class and three subclasses [1] under Federal Rule of Civil Procedure 23(b)(2) and (b)(3).[2]

Plaintiffs allege that the general class comprises all persons who executed the sales and financing agreements. According to plaintiffs, the sales and financing agreements violated TILA because the notices of rescission provided in the sales and financing agreements signed by each member of the class were inconsistent with each other. Plaintiffs seek a declaration that each member of the class is entitled to seek rescission. Further, all members of the class assert claims under the UTPCPL, and for state common law breach of contract, unjust enrichment, and breach of fiduciary duty for which they seek monetary damages.

In addition, plaintiffs assert that there are three subclasses comprising persons who are members of the general class, who also seek monetary damages under different theories of recovery. One, the members of Subclass A, claim that Empire defendants' collection practices violated the UTPCPL. Members of this subclass, who received certain form letters or who were subject to certain collection actions documented by defendants after October 17, 1996, claim that those letters and actions violated FDCPA. Two, members of Subclass B claim that Fredmont defendants' oral and written misrepresentations or statements caused a likelihood of confusion or misunderstanding as to the source of funds, sponsorship, affiliation, approval, or certification for home improvement services (e.g., whether the funds were a grant or a loan and whether the government was the source of those funds) and thus violated UTPCPL. Three, members of Subclass C claim that in violation of UTPCPL, repairs, improvements, or replacement goods and services provided by Fredmont were substandard, misdescribed, incomplete and/or otherwise inferior to the standard promised. Members of subclass C further assert claims for common law promissory estoppel. Members of subclasses B and C assert claims for common law negligent misrepresentation against all defendants and fraudulent misrepresentation against the Fredmont defendants only.

Plaintiffs claim that the Empire defendants are also subject to the claims which the members of the class could assert against

1. The general-class sought comprises:

> All persons who, from January 1993 through October 16, 1997 (the "Class Period"), were subjected to a two (2) contract sales and financing scheme for the purchase of home repair and/or remodeling goods and services from Fredmont in which they first signed a standard form work order contract ("Work Order Contract") in the form of Exhibit A or B hereto and, thereafter, signed a second ("Home Improvement Installment Contract") in the form of Exhibit C hereto, which was assigned by Fredmont to defendants Empire, TMI, EFC, or First Bank. Excluded from the Class are the defendant and all officers and directors of defendants.

Revised Second Am. Compl. at ¶ 18.

> The proposed class includes the following overlapping Subclasses:
>
> *Subclass A:* All Class Members who received telephone calls, letters or other communications from Empire, TMI, or EFC in violation of the FDCPA, UTPCPL or similar consumer protection laws in other states or state tort law (the "Unfair Collection Practice Subclass").
>
> *Subclass B:* All Class Members to whom Fredmont, in writing or orally, misrepresented, or made statements causing a likelihood of confusion or of misunderstanding as to the source of funds, sponsorship, affiliation, approval, or certification for its home improvement services (the "Government Affiliation Subclass")
>
> *Subclass C:* All Class Members who received from Fredmont repairs, improvements or replacement goods and services that were substandard, misdescribed, incomplete and/or otherwise inferior to the good and workmanlike standard orally promised and agreed upon in writing (the "Defective Work Subclass").

Revised Second Am. Compl. at ¶ 19.

2. The procedural history of the case is as follows. A complaint was filed on July 17, 1997 and was subsequently amended on October 17, 1997. On February 11, 1998, the Court approved a modified, jointly proposed case management plan permitting discovery to be taken in connection with issues of class certification. On March 12, 1998, plaintiffs filed a motion for class certification. On August 28, 1998, the Court entered a judgment of default against defendants Fredmont and Rabner for failure to answer or otherwise appear in this action. On September 29, 1998, the Court granted plaintiffs leave to file a second amended complaint. On October 19, 1998, the Empire defendants answered the second amended complaint. On October 29, 1998, a hearing on class certification was held.

Fredmont defendants[3] pursuant to a Federal Trade Commission rule. *See* 16 C.F.R. pt. 433.2 (known as the "FTC Holder in Due Course Rule").

For the reasons explained below, the Court, at this time, will conditionally certify plaintiffs' general class pursuant to Rule 23(b)(2) for the purposes of determining whether plaintiffs are entitled to seek rescission under TILA.[4] The Court will defer to a later date a ruling on plaintiffs' request for certification of the general class's claims under state law causes of action and those of the putative subclasses.

## II. DISCUSSION

### A. *Standard For Class Certification*

■■■ A party seeking class certification bears the burden of proving that the action satisfies the four threshold requirements of Federal Rule of Civil Procedure 23(a),[5] and that the action qualifies under one of the three subdivisions of Federal Rule of Civil Procedure 23(b).[6] *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997); *Barnes v. American*

---

3. The Court entered a judgment of default against defendants Fredmont Builders and Stanley Rabner on August 28, 1998. *See* doc. no. 59.

4. Rule 23(c)(1) requires that district courts "reassess their class rulings as the case develops." *Barnes v. American Tobacco Co.,* 161 F.3d 127, 138–39 (3d Cir.1998) (citations omitted).

5. Rule 23(a) provides that:
   One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
   Fed.R.Civ.P. 23(a).

6. Rule 23(b) provides that:
   An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
   (1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications

---

*Tobacco Co.,* 161 F.3d 127, 139–40 (3d Cir. 1998). When doubt exists concerning certification of the class, the court should err in favor of allowing the case to proceed as a class action. *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.1985). In the present case, plaintiffs contend that they satisfy each of the requirements of Rule 23(a) and Rule 23(b)(2) and 23(b)(3). The Court will analyze each requirement in turn, based on the allegations in plaintiffs' Revised Second Amended Complaint. The Court's findings in determining the appropriateness of class certification are not on the merits because for the purposes of class certification the Court must "refrain from conducting a preliminary inquiry into the merits." *Barnes,* 161 F.3d, at 140 (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). *See, e.g., In re the Prudential Ins. Co. of Am.,* 962 F.Supp. 450, 468 n. 6 (D.N.J.1997), *aff'd,* 148 F.3d 283 (3d Cir.1998).

### B. *The Rule 23(b) Requirements*[7]

Plaintiffs seek class certification pursuant to both Rule 23(b)(2) and 23(b)(3). For the

---

with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
   (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
   (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
   Fed.R.Civ.P. 23(b).

7. The Court recognizes that plaintiffs must satisfy the requirements of Rule 23(a) and one subsection of Rule 23(b). *Amchem,* 117 S.Ct. at 2245;

purposes of Rule 23 analysis, the Court will divide plaintiffs' claims into two: (1) those appropriate for Rule 23(b)(2) certification, i.e., the TILA claims which relate to declaratory relief applicable to all members of the general class and statutory damages to the named plaintiff; and (2) those claims appropriate for certification pursuant to Rule 23(b)(3), i.e., the state law claims made by the general class, and the statutory and state common law claims made by the subclasses, for which plaintiffs demand monetary damages.

■ As to the Rule 23(b)(2) class, plaintiffs allege that the use of the two-contract scheme was a practice used by defendants in the case of all class members. Plaintiffs request a declaration that the notices contained in the sales and financing contracts executed by the members of the class were inconsistent with each other, and that, as a result, under TILA, each class member is entitled to seek rescission.[8]

■ Under Rule 23(b)(2), the plaintiffs must show that the defendants "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2); *Barnes*, 161 F.3d, at 141–42. The Third Circuit has noted that:

> *Barnes*, 161 F.3d, at 139–40. The Court, however, will begin its analysis with a discussion of Rule 23(b), because, for the reasons set forth below, resolution of the Rule 23(b) issues will provide a context for and simplify the Rule 23(a) analysis.

8. A violation of the TILA's notice requirements entitles the consumer the right to rescind a loan for up to three years. 15 U.S.C. § 1635(f). The statute provides:

> (a) Disclosure of obligor's right to rescind. Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms

this requirement is almost automatically satisfied in actions primarily seeking injunctive relief.... What is important is that the relief sought by the named plaintiffs should benefit the entire class.

*Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58–59 (3d Cir.1994) (citing 1 H. Newberg & A. Conte, Newberg on Class Actions § 4.11, at 4–39 (1992)). Further, "[w]hile 23(b)(2) class actions have no predominance or superiority requirements [referring to requirements under Rule 23(b)(3) ], it is well established that the class claims must be cohesive." *Barnes*, 161 F.3d, at 143. Cohesiveness is required because "unnamed members are bound by the action without the opportunity to opt out" and individual issues could overwhelm the process and make the suit unmanageable. *Id.* at 142–44 (citing *Santiago v. City of Philadelphia*, 72 F.R.D. 619 (E.D.Pa.1976)).

Empire defendants argue that class action treatment is not proper for rescission claims under TILA because rescission is an individual remedy that must be analyzed on a case-by-case basis depending on the circumstances. Empire defendants point to the TILA statutory scheme that provides that in order to invoke the right to rescind the consumer must first notify the lender of that election,[9] affording the lender 20 days to

> required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.
>
> 15 U.S.C. § 1635(a).

9. The statute provides in pertinent part:

> When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any

respond to a consumer's demand before the matter can be brought to court. *See* 15 U.S.C. § 1635(b) (concerning the return of money or property following rescission). Empire defendants argue that, by affording class treatment to the instant claims, and ordering rescission for all the members of the class, Empire defendants would be deprived of the right to cure the infirmities alleged in the individual complaints before the complaints can be filed in court, as provided by TILA.

■ The availability of the class action mechanism under TILA is a matter of debate. *See generally* 7B Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1804 (2d ed.1998). Empire defendants point to a number of courts which have found that TILA claims for rescission are not appropriate for class action treatment.[10] However, the instant case is distinguishable from cases in which courts have refused to certify a class which sought rescission as a remedy in that, in this case, plaintiffs do not seek to rescind each contract as a remedy. Rather, plaintiffs only seek a declaration that the notices of rescission in the sales and financing contracts violate TILA, and thus that each member of the class is entitled to seek rescission. Should the Court declare that, indeed, plaintiffs are entitled to seek rescission because of certain infirmities in the TILA disclosure documents, then each class member, individually, and not as a member of the class, would have the option to exercise his or her right to seek rescission. As to any member of the class who triggered the statutory right to rescission, Empire defendants would have, in turn, the opportunity to exercise their rights to cure under TILA.[11] Viewed in that light,

money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court. 15 U.S.C. § 1635(b).

10. *See James v. Home Constr. Co. of Mobile, Inc.,* 621 F.2d 727, 731 (5th Cir.1980) (refusing to certify class seeking rescission under TILA because statutory scheme gives creditor certain rights before a rescission claim may be brought before a court); *Jefferson v. Security Pac. Fin. Servs., Inc.,* 161 F.R.D. 63 (N.D.Ill.1995) (agreeing with rationale of *James,* and concluding that actions seeking rescission under TILA § 1635 should not be certified); *Elliott v. ITT Corp.,* 150 F.R.D. 569 (N.D.Ill.1992), *report and recommendation adopted,* 150 B.R. 36 (N.D.Ill.1992) (refusing to certify class seeking rescission, having concluded that the class did not meet the Rule 23(b)(3) requirements); *Nelson v. United Credit Plan, Inc.,* 77 F.R.D. 54, 58 (E.D.La.1978) (having "found no evidence of congressional intent that class treatment is appropriate in actions seeking rescission in the Truth–in–Lending context," casting doubt on the "propriety of ever pursuing rescission under" TILA). *But see Tower v. Moss,* 625 F.2d 1161 (5th Cir.1980) (class certified under TILA with option to rescind offered after settlement of common claim); *Hickey v. Great Western Mortgage Corp.,* 158 F.R.D. 603 (N.D.Ill.1994) (permitting certification of a 23(b)(3) class seeking, inter alia, "a declaration that the class has a continuing right to rescind its transactions," having concluded that *Nelson* and its progeny were inapposite where the plaintiff had not rescinded his contract).

11. The statute provides:

(b) Return of money or property following rescission. When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the

the Court finds that there is nothing in the language of TILA which precludes the use of the class action mechanism provided by Rule 23 to obtain a judicial declaration whether an infirmity in the documents, common to all members of the class, entitles each member of the class individually to seek rescission.

■ Empire defendants further argue that 23(b)(2) certification is inappropriate because claims for monetary damages, rather than declaratory or injunctive relief predominate. *See Barnes,* 161 F.3d, at 142 ("Subsection (b)(2) class actions are 'limited to those class actions seeking primarily injunctive or corresponding declaratory relief.'") (quoting 1 Newberg § 4.11, at 4–39); *In re School Asbestos Litigation,* 789 F.2d 996, 1008 (3d Cir.1986) (Rule 23(b)(2) "'does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages.'") (quoting Fed.R.Civ.P. 23(b) committee notes). The Court disagrees with defendant that this presents an insurmountable obstacle to class certification. Plaintiffs allege that all class members who received defective notices under TILA were the subject of the common scheme to defraud, and, according to plaintiffs, they are thus all entitled to the same declaration that each is entitled to seek rescission. In this case the

"declaratory ... relief is sought as an integral part of the relief for the class." 1 Newberg § 4.14, at 4–51. Any damages resulting from the TILA violations, however, could be sought by the members of the class individually (and not as members of the class), following the statutory procedure for notice to the creditor.[12] Therefore, while the declaratory relief applies to all members of the class, damages are not part of the relief sought by the class for the TILA violations.[13] The Court therefore concludes that monetary relief does not predominate in this case.[14]

The Court finds that plaintiffs have met the requirements of Rule 23(b)(2). Plaintiffs allege that all members of the class executed identical contracts with notice provisions that violated the requirements of TILA and that these contracts were assigned to Empire defendants. Furthermore, a declaration of the existence of a right to rescind would benefit the class as a whole. *Baby Neal,* 43 F.3d at 58–59. Therefore, plaintiff has alleged that defendant "acted or refused to act on grounds generally applicable to the class." Fed.R.Civ.P. 23(b)(2). Finally, the Court finds that the class and the TILA claims are cohesive, in that all members of the class claim that they were subject to the illegal two-contract scheme and are entitled to de-

---

creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

15 U.S.C. § 1635.

**12.** Only the named plaintiff seeks statutory damages under TILA. Revised Second Am. Compl. at Part VIII(e).

**13.** Under the statute members of the class may seek monetary damages, as well, as rescission. 15 U.S.C. §§ 1635 and 1640. The complaint, however, appears to limit claims for statutory damages to the named plaintiff. Even if the general class sought statutory damages, however, relief in the form of monetary damages still would not predominate, because after Empire defendants exercised their right to cure, damages might only available to some of the members of the class. *See Gelb v. American Tel. & Tel. Co.,* 150 F.R.D. 76, 79 (S.D.N.Y.1993) (certifying a Rule 23(b)(2) class in case alleging consumer

fraud "even if damages are eventually awarded").

**14.** Even if the Court had found that injunctive relief did not predominate, at least one commentator has cautioned:

When parties dispute which form of relief is predominant with respect to the appropriateness of Rule 23(b)(2) for any class certification, it is counterproductive for the court to expend time to try to resolve this largely discretionary question, which does not address the merits of the case. Rather the court should conclude that when the Rule 23(a) prerequisites are satisfied and declaratory or injunctive relief is sought as an integral part of relief for the class, then Rule 23(b)(2) is applicable regardless of the presence or dominance of additional prayers for damages relief for class members.... [This procedure] substitutes a more efficient and predictable determination that promotes the objectives of Rule 23 and is consistent with the purposes and rationale for the creation of the Rule 23(b)(2) class category.

1 Newberg § 4.14, at 4–50 to 4–52.

claratory relief. *Barnes,* 161 F.3d, at 142–44.[15]

■ The Court also finds that conditionally certifying the general class seeking a declaration of a right to rescind under TILA first pursuant to Rule 23(b)(2), before turning to certification of a class or classes pursuant to Rule 23(b)(3) for the damage claims under state law causes of action, is appropriate for case management. Plaintiffs' allegations under TILA center around the standardized form contracts used by defendants. According to plaintiffs, the forms are illegal on their face and these claims are subject to summary judgment disposition one way or the other. In the interest of procedural ease, therefore, the Court will first address the merits of the TILA claims certified under Rule 23(b)(2), before turning later in the proceedings to the more complex issues raised by the request for certification of the state law claims made by the general class and the statutory and common law claims made by the putative subclasses under Rule 23(b)(3). *See, e.g., Eubanks v. Billington,* 110 F.3d 87 (D.C.Cir.1997) (suggesting certification in a Title VII employment case of Rule 23(b)(2) class for claims for declaratory or injunctive relief and 23(b)(3) class at monetary relief stage) (citing *Holmes v. Continental Can Co.,* 706 F.2d 1144 (11th Cir. 1983)); *Pigford v. Glickman,* 182 F.R.D. 341, 351 (D.D.C.1998) (certifying a Rule(23)(b)(2) class first for the purposes of determining liability with the possibility of later certifying a 23(b)(3) class at the remedy stage); 1 Newberg § 4.14, at 4–51 to 4–52 (offering four options for class certification where 23(b)(2) class seeks declaratory and monetary relief). Plaintiffs agree that this management tool would have no substantive effect on the case, and would not prejudice plaintiffs' claims. (Tr. 10/29/98 at 18–19). Furthermore, proceeding in this fashion may enhance the prospects of settlement.

### C. *Rule 23(a) Requirements*

■ Having determined that, at this time, the Court will conditionally certify only the general class, and only as it relates to the TILA rescission claims under Rule 23(b)(2), the Court will apply the Rule 23(a) factors to the general class and to the claims asserted under TILA. Under this aspect of Rule 23, a class must satisfy the following elements before it may be certified: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Barnes,* 161 F.3d, at 140–41. "The requirements of Rule 23(a) are meant to assure both that class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances." *Id.* (quoting *Baby Neal,* 43 F.3d at 55). In accordance with the Court's duty to rigorously ensure compliance with Rule 23(a), *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), it will examine plaintiffs' allegations relating to all four prongs.

#### 1. *Numerosity*

■ In order to satisfy Rule 23, "[t]he court must find that the class is 'so numerous that joinder of all members is impracticable.'" *Prudential,* 148 F.3d at 309 (citing Fed.R.Civ.P. 23(a)(1)). Although plaintiff does not have to recite a "magic minimum number," *Gaskin v. Commonwealth of Pa.,* No. 94–4048, 1995 WL 355346, at *2 (E.D.Pa. June 12, 1995), "mere speculation does not satisfy Rule 23(a)(1)." *Gillis v. Hoechst Celanese Corp.,* No. 90–5542, 1992 WL 68333, at *5 (E.D.Pa. Apr. 1, 1992); 7A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1762. However, defendants "may not use plaintiff's lack of knowledge as to the exact number of affected persons as a bar to plaintiff maintaining this action as a class action." *Bremiller v. Cleveland Psychiatric Inst.,* 898 F.Supp. 572, 576–77 (N.D.Ohio 1995).

■ In this case, the proposed class consists of all persons who, during the Class Period, were subjected to the two contract sales and financing scheme for the purchase of home repair and/or remodeling goods and

---

**15.** In *Barnes,* the Third Circuit affirmed the district court's decertification of a Rule 23(b)(2) medical monitoring class of cigarette smokers suing tobacco companies, agreeing that addic- tion, causation, and affirmative defenses presented individual issues that rendered the class insufficiently cohesive to permit continued class certification. *Barnes,* 161 F.3d, at 143–44.

services from Fredmont defendants in which they first signed a standard Work Order Contract and thereafter signed a Home Improvement Installation Contract which was immediately assigned by Fredmont to Empire defendants. Plaintiffs point to the testimony of Empire defendants' witnesses that Empire defendants financed in excess of 300 Home Improvement Installment Contracts that originated with Fredmont.

Empire defendants respond that because the class definition is imprecise, it is impossible to determine how many persons may be in the class. Specifically, Empire defendants argue that the plaintiffs' number of 300 is merely an outside parameter, and that pre-certification evidentiary hearings, in the form of individual "mini trials" to hear the merits of member of the class, would be required to determine exactly who is in the class.

In this case, however, plaintiffs allege that the documents received by the putative class members are illegal on their face, and that this is the central issue of the TILA claims. Therefore, all the recipients of the two contracts, approximately 300 persons, will constitute the class. The Court therefore finds that the numerosity requirement is satisfied.

### 2. Commonality and Typicality

■■■ Although Rule 23(a) establishes the commonality and typicality requirements as separate and distinct prerequisites to class certification, the analyses overlap, and therefore these concepts are often discussed in tandem. *See Barnes,* 161 F.3d, at 140–41 (citing *Baby Neal,* 43 F.3d at 56); *Prudential,* 148 F.3d at 311. Both commonality and typicality "serve as guideposts for determining whether ... maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem,* 117 S.Ct. at 2250 n. 20 (quoting *General Tel. Co.,* 457 U.S. at 157 n. 13, 102 S.Ct. 2364 (1982)); *Prudential,* 148 F.3d at 310. The typicality and commonality elements of Rule 23 require that the plaintiffs' claims be common and not in conflict. *Hassine v. Jeffes,* 846 F.2d 169, 176–77 (3d Cir.1988). "A finding of common-

ality does not require that all class members share identical claims, and indeed 'factual differences among the claims of putative class do not defeat class certification.'" *Prudential,* 148 F.3d at 310 (quoting *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir.1994)). If the named plaintiff shares at least one question of law or fact with the prospective class, the commonality requirement is satisfied. *Id.* Furthermore, because the presence of only a single common issue satisfies this requirement, it is easily met. *Prudential,* 962 F.Supp. at 510 (citing 1 Newberg § 3.10, at 3–50 to 3–52).

Plaintiffs allege a common course of fraudulent conduct by defendants, and point to similar allegations made by the plaintiff in the recent Third Circuit case, *In re Prudential Insurance Company of America Sales Litigation,* 148 F.3d 283 (3d Cir.1998). In the *Prudential* case, the district court certified a class of plaintiffs who alleged that Prudential had developed a common fraudulent sales and marketing scheme to induce policyholders to purchase Prudential policies. *Prudential,* 962 F.Supp. 450. Specifically, the *Prudential* plaintiffs alleged that Prudential, using tactics such as "churning," "vanishing premium," and "investment plan techniques," and through a centralized marketing system and the use of false and misleading sales presentations, policy illustrations, marketing materials, and other information that Prudential approved, prepared, and disseminated to its nationwide sales force, deceived plaintiffs into purchasing new insurance policies. *Id.* at 474. The district court rejected the notion that the need for individual plaintiffs to prove reliance for their claims or the existence of individual damage issues prevented a finding of commonality. Rather, the allegations of a uniform and common scheme of oral and written misrepresentations were sufficient to establish the predominance of common issue. As to typicality, the district court found that although all of the named plaintiffs alleged either churning, vanishing premium, or investment plan claims, "it relied on the 'prominent guiding thread through all plaintiffs claims—Prudential's scheme to defraud' to support its conclusion that the claims of the named plaintiffs

are typical of the class as a whole.' " *Prudential,* 148 F.3d at 310 (quoting district court's opinion, 962 F.Supp. at 518).

■ Similar to *Prudential* plaintiffs, plaintiffs in this case allege a common scheme to fraudulently induce them to purchase home improvements and repairs. Central to plaintiffs' claims are the two-contracts entered into by plaintiffs and Fredmont defendants. Plaintiffs claim that these contracts speak for themselves, independent of any oral representations made by Fredmont defendants or Empire defendants to individual class members, and regardless of whether the individual misrepresentations made by defendants' agents to class members may have differed.

Empire defendants counter that, unlike *Prudential,* plaintiffs have not adduced any "evidence," such as a script given to salespeople or policy manuals during the precertification hearing, (Tr. 10/29/98 at 31–46), that prove defendants perpetrated an overarching scheme. The Court finds that the two-contract scheme, like the scheme in *Prudential,* involved a common design that is applicable to all members of the class. In any event, requiring such "evidence" of the existence of the two-contract scheme, as Empire defendants suggest, would be improper because at this stage of the proceedings the court must not inquire into the merits of the claims, but rather must accept as true the allegations in the complaint. *Eisen,* 417 U.S. at 177, 94 S.Ct. 2140. *See, e.g., Stewart v. Associates Consumer Discount Co.,* 183 F.R.D. 189, 193 (E.D.Pa.1998); *Prudential,* 962 F.Supp. at 468 n. 6;.

Empire defendants also argue that the named plaintiff's claim is not typical because she believed she was receiving a grant, whereas the other potential class members deposed, knew that they were entering into some sort of loan transactions. Empire defendants claim that the named plaintiff in this case experienced a different type of fraud—one in which she did not know that she had entered into a loan, until she was subject to collection efforts. By contrast the other potential class members' claims of fraud center around their perceived belief that they were unable to back out of the transaction once the rescission period had expired and before the financing contract had been presented to them.

■ The Court disagrees with defendants' contentions. To the contrary, typicality only requires that the harm complained of be common to the class. *Barnes,* 161 F.3d, at 140–41. As the Third Circuit has stated:

[c]ommentators have noted that cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims [citation omitted] ... Actions requesting declaratory and injunctive relief to remedy conduct directed at the class clearly fit this mold.

*Baby Neal,* 43 F.3d at 58. In other words, typicality does not require that the claims of each member of the class be identical. *Barnes,* 161 F.3d, at 140–41. " '[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories,' " *Id.* (quoting *Baby Neal,* 43 F.3d at 58), "or where the claim arises from the same practice or course of conduct," *Prudential,* 148 F.3d at 311. Plaintiffs allege that the named plaintiff was induced by the two-contract scheme to enter into contracts for home improvement by means of unfair and deceptive solicitation practices and deceptive form contracts which effectively deprived her of the right to rescind. This is the essence of the claim of each of the class members. Similar to the case in *Prudential,* the gravamen of plaintiffs' claim is the existence of an "overarching scheme," and it is this "overarching scheme" that is the "linchpin" of the Revised Second Amended Complaint. *Prudential,* 148 F.3d at 311. Because Williams's claim, as the class representative, raises the same practice and course of conduct of defendants that is alleged by the class, the Court therefore finds that the commonality and typicality requirements are satisfied.

**440**

### 3. Adequacy [16]

 Federal Rule of Civil Procedure 23(a)(4) provides that a class action may be maintained only if "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). A determination of the adequacy of the proposed representation of a class involves a two-pronged inquiry: (1) whether plaintiffs' counsel is qualified, experienced, and generally able to conduct the proposed litigation, and (2) whether plaintiffs' interests are antagonistic to those of the class. *Barnes,* 161 F.3d, at 141–42; *Weiss v. York Hosp.,* 745 F.2d 786, 811 (3d Cir.1984).

Empire defendants argue that plaintiffs' counsel's representation of another class against the same defendant in *Harris v. Green Tree Financial Corp.,* No. 97–CV–1128 (E.D. Pa. filed Feb. 14, 1997), creates a conflict, because execution on a judgment against Fredmont defendants in this matter could diminish or deplete the assets potentially available to plaintiffs in the *Harris* case. The Court disagrees. Whether a lawyer representing two separate clients who are seeking to collect on separate judgments against the same defendants may be in a conflict position is by no means clear. In any event, at this time, any allegations of conflict are merely speculative and hypothetical, given that Fredmont defendants have defaulted in this case and apparently have no assets. Thus, the appropriate time to make the determination on whether there is a conflict or an appearance of conflict which would disqualify counsel in this case, would be when Fredmont defendants are found, assets are identified, and execution is impending. In other words, the Court does not conclude that there would never be a conflict under the scenario hypothesized by Empire defendants, but simply that, under the present circumstances, there is no conflict or appearance of conflict. Because the Court con-

cludes that the concerns about a conflict or a potential conflict are premature, it finds that the requirements for adequacy have been met at this time.[17] *See, e.g., In re Olsten Corp. Securities Litigation,* 3 F.Supp.2d 286, 296 (E.D.N.Y.1998) (noting that speculative or hypothetical assertions are insufficient to defeat adequacy).

### III. CONCLUSION

For these reasons, the Court concludes that plaintiffs have satisfied the Rule 23 requirements and will grant the motion for class certification, conditionally certifying the general class seeking a declaration of the right to seek rescission under TILA pursuant to Rule 23(b)(2).

---

**16.** Defendants also argue that "plaintiff's counsels' decision to wait until they filed this motion for certification to also move to amend the complaint should be a matter of concern for this Court." Defs.' Mem. at 54. Because the Court already granted plaintiff's motion for leave to amend the complaint, this argument is moot.

**17.** In the unlikely event that a conflict or the appearance of a conflict developed in the future, the disability would apply to only one of the lawyers to the class. In that event, because plaintiffs are represented by multiple counsel, the litigation could proceed unimpaired by the removal of disqualified counsel.