Kim WILLIAMS, Plaintiff,

v.

EMPIRE FUNDING CORPORATION, et al. Defendants.

No. Civ.A.97–4518.

United States District Court,
E.D. Pennsylvania.

April 11, 2005.

David A. Searles, Donovan Searles, LLC, Henry J. Sommer, Miller, Frank and Miller, Philadelphia, PA, for Plaintiff.

Kevin M. Lippman, Munsch Hardt Kopf & Harr, Dallas, TX, Mina A. Brees, Munsch Hardt Kopf & Harr, Austin, TX, Stephen W. Armstrong, Montgomery McCracken Walker & Rhoads LLP, John J. Soroko, Duane Morris LLP, Philadelphia, PA, Leslie A. Greathouse, Kutak Rock LLP, Kansas City, MO, Patrick L. McLaughlin, Dorsey & Whitney LLP, Minneapolis, MN, for Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

On behalf of herself and others similarly situated, plaintiff filed an action against various financial institutions and debt-collection agencies, alleging federal and state violations of consumer protection laws.[1] After almost eight years of litigation, TMI Financial, Inc. is the only defendant remaining, and only a state claim under Pennsylvania law is pending.

Plaintiff alleges that defendant engaged in improper debt-collection activities, in violation of the Pennsylvania Debt Collection Trade Practices Regulations ("Debt Collection Regulations"), 37 Pa.Code § 303.[2] Plaintiff seeks relief for defendant's debt-collection violations under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1, et seq. ("UTPCPL"). Before the Court is plaintiff's renewed motion for class certification (doc. no. 256)[3] and supplemental memorandum (doc. no. 259), defendant's opposition (doc. no. 261), and plaintiff's reply (doc. no. 262).

There is a fundamental disconnect between plaintiff's defined class and the source of injury from which plaintiff seeks relief. This is due, in part, to the stringent causation requirement plaintiff must meet to maintain a private right of action under the UTPCPL. Viewing this substantive requirement through the prism of Federal Rule of Civil Procedure 23, it becomes clear that plaintiff cannot meet the typicality prong of Rule 23(a). Thus, the Court must deny class certification.

## I. BACKGROUND

On June 8, 1995, plaintiff entered into a Home Improvement Installment Contract with Fredmont Builders, Inc. Shortly thereafter, defendant TMI Financial reviewed and approved the loan for funding. Defendant's payment records indicate that plaintiff did not make her first loan payment until a month after the due date. Plaintiff's non-payment prompted defendant to engage in various debt-collection practices. Plaintiff avers that defendant sent her unlawful form letters and collection notices, and made inappropriate telephone calls to her home and

---

1. Plaintiff and certain defendants settled the federal claims.

2. When plaintiff initiated the instant action in 1997, the Pennsylvania Debt Collection Trade Practices Regulations governed violations of unfair debt-collection practices. The Pennsylvania Fair Credit Extension Uniformity Act ("PFCEUA"), 73 P.S. § 2270 et seq., however, superseded the Pennsylvania Debt Collection Trade Practices Regulations, effective June 2000. The PFCEUA "establishes what shall be considered unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts." 73 P.S. § 2270.2. Engaging in a defined act or practice under the PFCEUA is a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–9.2 ("UTPCPL"). See Piper v. Portnoff

Law Assocs., 274 F.Supp.2d 681, 685 n. 4 (E.D.Pa.2003). In her class certification papers, plaintiff acknowledged that "no material difference" exists between these two regulations for purposes of plaintiff's claim against defendant. Mem. in Supp. of Pl.'s Renewed Mot. for Class Certification at 2 n. 1.

3. Previously, the Court conditionally certified one of plaintiff's classes, whose federal claims stemmed from alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq. Williams v. Empire Funding Corp., 183 F.R.D. 428, 433 (E.D.Pa.1998) ("Williams I"). At that time, the Court deferred ruling on class certification for the state-law claims. Id. Plaintiff later moved for class certification on the state-law claims (doc. no. 244), which the Court denied without prejudice (doc. no. 255).

workplace. A careful parsing of plaintiff's deposition testimony, specifically relating to defendant's form letters and telephone calls, is imperative to understanding her underlying UTPCPL claim and how her claim relates to the claims asserted by the proposed class.

Plaintiff concedes that she did not read the content of the debt-collection form letters sent to her by defendant. Nonetheless, because of the writing on the envelopes containing the form letters, plaintiff knew the mailings were from defendant, even without reading them.

In addition to sending plaintiff numerous form letters, defendant allegedly subjected plaintiff and her family to intrusive and harassing telephone calls. First, plaintiff felt threatened by defendant's debt-collection phone calls, as evidenced by her deposition testimony.

Q: Did you make any payments to Empire?[4]

A: Yes.

Q: Why?

A: Because they threatened me. They threatened me. They threatened to take my house from me. I ain't know why they take my house from me when the government gave me something.

.    .    .    .    .

Q: Did the person threaten you on the phone or with a letter?

A: They threatened me on the phone.

Q: They threatened you on the phone?

A: Yes.

Dep. of Plaintiff Kim Williams ("Williams Dep."), Feb. 2, 1998, Tr. at 183–84. Plaintiff also testified that during these debt-collection telephone calls, some of which occurred late at night, defendant vowed to take away her house and put her children on the street. Additionally, defendant allegedly used abusive language as a means of collecting payments from plaintiff.

Q: What did they say?

A: They called 12, one o'clock at night telling me if I don't make a payment on the work that was done in my house, they was going to take my house from me and they'll see that me and my kids is out in the street.

Q: Somebody said that to you on the phone?

A: Yes, they did. Yes, they did.

Q: They called you at 12 or one in the morning?

A: Yes. He even called and asked for me and had music playing in the background, okay, and I said, "Well, it wasn't me," and then they called again. The music was playing again in the background. He tried [to] hid[e] his voice. I said, "This is Kim." He said, "You better pay that fucking money," just like that, "or we going to have your family out in the street."

Q: Somebody said that to you?

A: Yes, they did, 12:30, one o'clock at night.

.    .    .    .    .

Q: Was it after you had already started making payments?

A: Yes, and then I stopped. I stopped 'cause they was calling me and they was badgering me. I couldn't sleep. I missed days of work 'cause they called my job.

*Id.* at 185–86.

Second, because of defendant's telephone calls, plaintiff claims that she felt constrained to violate her employer's policy restricting personal telephone calls, lost productive work time and pay, was compelled to change her telephone number, and suffered from worry and stress.

Q: What about your employer? Did you tell them not to take any calls?

A: They was harassing me. They told me I couldn't get no calls. They harassed me on my job.

Q: So, your employer told you [that] you couldn't get any calls?

A: Yes.

.    .    .    .    .

Q: In that letter, it says that you had lost two days of work.

A: Yes.

---

4. Defendant TMI Financial transferred its loan servicing business to Empire Funding Corporation, a former defendant in this action, sometime in the mid–1990s.

Q: Can you tell me what that was all about?

A: Stress. They stressed me out. They stressed me out so bad calling my job—I mean they was, like, calling. They would bring me messages. They would bring me messages. Before all this started, I can get a phone call from my kids if something go[es] wrong.

Q: All right.

A: I can't get a phone call. I had to go buy a beeper so my kids can page me. I have to go outside the building to use the phone. I destroyed everybody else's calls on the job because the calls was coming frequently.

Q: All right. With the two days of work—when was it that you lost those two days of work?

A: I—I can't remember. I can't remember.

.    .    .    .    .

Q: The two days of work that you missed, how long after was it that you got the called [sic] from Empire?

.    .    .    .    .

A: I don't know how long after.

Q: Did you get paid for those two days?

A: Paid what? If I miss a day to work, I miss pay. I don't have that kind of job.

Q: What is the daily pay you missed on those two days?

A: I make 8.60 an hour.

Q: Is it an eight-hour shift?

A: Yes.

Q: You work the full eight hours, or do you have to take out for lunch?

A: I work straight through.

*Id.* at 201, 210–11.

In fact, defendant's constant calling compelled plaintiff to change her home telephone number:

---

Q: You change[d] your phone number at some point in time?

A: Yes.

Q: Why was that?

A: Because they was harassing me too bad.

Q: Did it cost you any money to change your phone number?

A: No. I just—I just told [the phone company] that I was being harassed late at night, me and my kids.

*Id.* at 226.

Finally, plaintiff testified that defendant's debt-collection telephone calls caused her tremendous worry and stress.

Q: Would you tell me what other damages you suffered?

A: Worrying. Worrying.

Q: About losing your home?

A: Losing my house and losing my hair.

Q: Losing your house—

A: You know, when you worry, you're worrying, the back of your hair where you be rubbing, your nerves—my nerves is bothering me. By my nerves bothering me, it's, like, constantly, you know, doing like this all the time, and the back of my hair came out.

*Id.* at 235.

Plaintiff not only contends that defendant's actions violated Pennsylvania's consumer protection laws as to her, but also asserts that defendant's allegedly improper collection activities were uniformly directed to members of a proposed class. Plaintiff defines the proposed class as:

[A]ll persons included within the definition of the class defined in paragraph 2 of this Court's Order entered June 27, 2002[5] to

persons who, from January 1993 through October 16, 1997, were subjected to a two-contract sales and financing scheme for the purpose of home repair and/or remodeling good and services from Fredmont Builders, Inc. in which they first signed a standard form work order contract, and thereafter, signed a second Home Improvement Instal-

---

5. Paragraph 2 of the Court's June 27, 2002 Order states:

This action shall be maintained, for purposes of a settlement between the class and defendant U.S. Bank, N.A., trustee ("U.S.Bank"), as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. A settlement class is certified as consisting of all

whom, during the six years prior to the filing of this class action, defendant TMI Financial, Inc. sent *letters or other communications substantially in the form of the letters* attached to the Plaintiff's Motion for Partial Summary Judgment Against Defendant TMI Financial, Inc., in an attempt to collect a non-business debt. Excluded from the TMI Class are all officers and directors of the defendant.

Mem. of Law in Supp. of Pl.'s Renewed Mot. for Class Certification at 4 (emphasis added). Reduced to its essence, plaintiff wishes to represent a class of persons to whom defendant sent improper debt-collection form letters, similar to the ones she received. Although plaintiff alleges to have received telephone calls, as well as form letters, from defendant, she does *not* restrict the class to individuals who received both telephone calls and form letters *or* to individuals who just received telephone calls. Because of a disconnect between plaintiff's defined class and the source of injury from which plaintiff seeks relief, the Court must deny class certification.

## II. DISCUSSION

### A. *Plaintiff's Underlying Claims for Class Certification*

■ Generally, a court should refrain from conducting a preliminary inquiry into the merits of an action at the class certification stage. *Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 140 (3d Cir.1998). Nevertheless, a court's consideration for class certification is "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)); *see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 166 (3d Cir.2001) ("A class certification decision requires a thorough examination of the factual and legal allegations."); *Barnes,* 161 F.3d at 140 ("In considering whether certification is proper, we refrain from conducting a preliminary inquiry into

lation Contract, which was at some point assigned to U.S. Bank. Excluded from the class are the defendant and all officers and directors of the defendant.

the merits. At the same time, we must carefully examine the factual and legal allegations.") (internal citations omitted). "Sometimes [these] issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co.,* 457 U.S. at 160, 102 S.Ct. 2364. The latter is true in the instant case.

As the United States Supreme Court recognized in *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978),

> [e]valuation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims. The *typicality* of the representative's claims or defenses, the *adequacy of the representative,* and the presence of common questions of law or fact are obvious examples. The more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits....

*Id.* at 469 n. 12, 98 S.Ct. 2454 (emphasis added) (quoting 15A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3911, p. 485 n. 45 (1976)).

■ Plaintiff's remaining claim involves a private action under UTPCPL's Section 201–9.2, alleging that defendant violated Pennsylvania's Debt Collection Regulations. Even if an entity violated a consumer protection law, such as the Pennsylvania Debt Collection Regulations, such a violation does not automatically entitle an individual to bring a private action under the UTPCPL. Rather, only under certain circumstances may an aggrieved individual seek a private remedy, as prescribed by Section 201–9.2 of the UTPCPL:

> Any person who purchases or leases goods or services primarily for personal family or household purposes and thereby suffers

(doc. no. 199) (footnote omitted).

*any ascertainable loss of money or property*, real or personal, *as a result of* the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action *to recover actual damages or one hundred dollars ($100)*, whichever is greater.

73 P.S. § 201–9.2 (emphasis added). Thus, a plaintiff must establish, *inter alia*, the requisite causation to maintain a viable private action under the UTPCPL.

■ In the seminal case of *Weinberg v. Sun Co., Inc.*, 565 Pa. 612, 777 A.2d 442 (2001), the Supreme Court of Pennsylvania examined the UTPCPL's Section 201–9.2. *Id.* at 615–18, 777 A.2d 442. Recognizing that the UTPCPL's roots are firmly grounded in fraud prevention, the Supreme Court of Pennsylvania stated "[n]othing in the legislative history suggests that the legislature ever intended statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation." *Id.* At 618. As the Supreme Court of Pennsylvania determined, "[t]he statute clearly requires, in a private action, that a plaintiff suffer an ascertainable loss *as a result of* the defendant's prohibited action." *Id.* (emphasis in original); *see also Griffith v. Mellon Bank, N.A.*, 328 F.Supp.2d 536, 539 n. 11 (E.D.Pa.2004) (Robreno, J,) ("Specifically, [plaintiff] failed to plead reliance and damages. This flaw was fatal … since it is well settled that a plaintiff bringing a private action under Pennsylvania's Uniform Trade Practices and Consumer Protection Law ("UTPCPL") must establish the elements of common-law fraud."); *Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 11 (Pa.Super.2004) ("Upon our review of the Supreme Court's decision in *Weinberg*, we must conclude that *every plaintiff* asserting a private cause of action under the UTPCPL must demonstrate his/her justifiable reliance on the misrepresentation or wrongful conduct.") (emphasis added); *Weiler v. SmithKline Beecham Corp.*, No. 2422, 2001 WL 1807382, at *3 (Pa.

Ct. Comm. Pleas Oct. 8, 2001) ("As noted by several Pennsylvania appellate court decisions, a private plaintiff, whose right to act arises under UTPCPL Section 9.2, must show that he or she was damaged as a result of a defendant's unlawful act…. As a result, the Plaintiffs must plead that they suffered harm as a result of [defendant's] deceptive conduct.") (internal citations omitted).

Moreover, any doubt as to whether statutory damages are available under the UTPCPL has been resolved in the negative, in light of the Supreme Court of Pennsylvania's *Weinberg* decision.[6] 565 Pa. at 615, 777 A.2d 442; *see also Saunders v. Berks Credit & Collections, Inc.*, No. Civ. 00–3477, 2002 WL 1497374, at *12 (E.D.Pa. July 11, 2002) ("The Pennsylvania Supreme Court has interpreted this section to mean that statutory damages are unavailable under the [Pennsylvania Unfair Trade Practices & Consumer Protection Law] in the absence of an ascertainable loss of money or property proximately caused by the defendant's prohibited conduct.") (internal quotations and citation omitted); *Tenuto v. Transworld Sys., Inc.*, No. Civ. A. 99–4228, 2002 WL 188569, at *1 (E.D.Pa. Jan.31, 2002) ("[T]he Pennsylvania Supreme Court definitively held that statutory damages are unavailable under the UTPCPL in the absence of an ascertainable loss of money or property proximately caused by the defendant's prohibited conduct.").

In the instant case, plaintiff contends that she suffered an ascertainable loss of money, i.e., loss of income, as a result of defendant's improper telephone calls. Plaintiff fails, however, to show whether she or *any* proposed class member suffered an ascertainable loss of money or property as a result of defendant's debt-collection form letters. Despite plaintiff's effort in providing the history of defendant's debt-collection activities for certain proposed class members, these records only show that individuals were sent particular form letters, not that any member

---

6. In *Fry v. Hayt, Hayt, & Landau*, 198 F.R.D. 461 (E.D.Pa.2000) (Robreno, J.), a case involving a class-action settlement, this Court noted that "it is unclear whether a violation of the Debt Collection Trade Practices Regulations, incorporated into the [UTP]CPL, allows statutory damages in cases in which no actual damages are proven." *Id.* at 473–74. Since the *Fry* decision, the Supreme Court of Pennsylvania decided *Weinberg v. Sun Co., Inc.*, 565 Pa. 612, 777 A.2d 442 (2001), shedding light on this issue.

of the class suffered a loss of money or property because of having been sent the form letters.[7]

█ It is true that by simply sending improper debt-collection form letters, defendant may have violated a section of the Pennsylvania Fair Credit Extension Uniformity Act ("PFCEUA"),[8] such as Section 2270.4(b)(6)(viii).[9] Under that scenario, the Pennsylvania Attorney General may bring an action without showing that either plaintiff or the proposed class members actually received or read the form letters. By contrast, however, a private action under the UTPCPL, unlike the case where the action is brought by the Pennsylvania Attorney General, requires a plaintiff to establish that defendant's purportedly unlawful conduct caused an definable loss of money or property. This causation requirement is expressly

7. During the Court's hearing to consider plaintiff's renewed motion for class certification, plaintiff's counsel argued that the proposed class members suffered a monetary loss by making payments on their loans *after* receiving defendant's form letters. Plaintiff, however, neither asserted this theory of causation in her papers nor has she provided evidence of this occurrence. For both reasons, the belated argument is rejected.

8. The Pennsylvania Fair Credit Extension Uniformity Act ("PFCEUA"), 73 P.S. § 2270 *et seq.*, superseded the Pennsylvania Debt Collection Trade Practices Regulations, 37 Pa.Code § 303, effective June 2000. *See supra* note 1.

9. In part, Section 2270.4 states:

(6) A creditor may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this paragraph:
(viii) Using any language or symbol, other than the creditor's address, on any envelope when communicating with a consumer by use of the mails or by telegram, provided that a creditor may use its business name. 73 P.S. § 2270.4(b)(6)(viii).

10. Federal Rule of Civil Procedure 23(a) prescribes:

One or more members of a class may sue or be sued as representative parties on behalf of all only if
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;

prescribed by the UTPCPL. 73 P.S. § 201–9.2.

In determining whether a plaintiff can satisfy the requisite causation under the UTPCPL, the court must look "through the prism of [Federal Rule of Civil Procedure] 23." *Newton,* 259 F.3d at 181. Without a showing of an ascertainable loss of money or property to plaintiff and the class members resulting from defendant's alleged mailings, plaintiff cannot meet all the requirements for class certification.

## B. *Legal Standards for Class Certification*

█ The proponent of class certification carries the burden of proving that the action satisfies not only the four threshold requirements of Federal Rule of Civil Procedure 23(a),[10] but also one of the three requisites of Federal Rule of Civil Procedure 23(b).[11]

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

11. Federal Rule of Civil Procedure 23(b) provides:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
(A) the interest of members of the class in individually controlling the prosecution or

Fed.R.Civ.P. 23; *see also Johnston v. HBO Film Mgmt., Inc.,* 265 F.3d 178, 183–84 (3d Cir.2001) (discussing Rule 23's requirements); *Williams v. Empire Funding Corp.,* 183 F.R.D. 428, 433 (E.D.Pa.1998) (*"Williams I"*) (same). "When doubt exists concerning certification of the class, the court should err in favor of allowing the case to proceed as a class action." *Williams I,* 183 F.R.D. at 433.

### C. *Rule 23(a) Requirements*

■■■■ The proponent of class certification must satisfy Rule 23(a)'s requirements of (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R.Civ.P. 23(a). Rule 23(a) is meant "to assure both that class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances." *Baby Neal v. Casey,* 43 F.3d 48, 55 (3d Cir.1994). A court is obligated to engage in a rigorous analysis to ensure that the requisites of Rule 23(a) are satisfied. *Gen. Tel. Co.,* 457 U.S. at 161, 102 S.Ct. 2364; *see also Williams I,* 183 F.R.D. at 437 (noting "the Court's duty to rigorously ensure compliance with Rule 23(a)").

■■■ Because the analysis for Rule 23(a)'s commonality and typicality requirements "tend to merge," the Court will address these class-certification concepts in tandem. *Gen. Tel. Co.,* 457 U.S. at 157 n. 13, 102 S.Ct. 2364. "Both [the commonality and typicality requirements] serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.; see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 626 n. 20, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting *Gen. Tel. Co.,* 457 U.S. at 157 n. 13, 102 S.Ct. 2364).

■■■ To satisfy the commonality requirement, plaintiff must show that questions of law or fact are common to the class.

Fed.R.Civ.P. 23(a)(2). "A finding of commonality does not require that all class members share identical claims, and indeed 'factual differences among the claims of the putative class members do not defeat certification.'" *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.3d 283, 310 (3d Cir.1998) (quoting *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir.1994)). The named plaintiff need only share "at least one question of law or fact with the grievances of the prospective class" for the commonality requirement to be satisfied. *Baby Neal,* 43 F.3d at 56. Put another way, "Rule 23 does not require that the representative plaintiff [to] have endured precisely the same injuries that have been sustained by the class members, only that the harm complained of be *common* to the class...." *Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir.1988) (emphasis in original). The threshold for commonality is very low. *Newton,* 259 F.3d at 183.

■■■ In the instant case, defendant sent allegedly unlawful debt-collection form letters to plaintiff and the proposed class members. Whether defendants engaged in this unlawful debt-collection practice is a factual issue common to plaintiff and the putative class, thereby satisfying Rule 23(a)'s commonality requirement. Although it is not apparent that the harm from which plaintiff purportedly suffered is common to any harm that the proposed class might have endured, this difference will not destroy commonality.

■■■■ In turn, "typicality entails an inquiry whether the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.1985) (citing *Weiss v. York Hosp.,* 745 F.2d 786, 809 n. 36 (3d Cir.1984)). This requirement is meant to assess "whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentee's interests will be fairly represent-

defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desira-

bility or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

ed." *Baby Neal*, 43 F.3d at 57. "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories, or where the claim arises from the same practice or course of conduct." *Williams I*, 183 F.R.D. at 439. The purpose of the typicality requirement is "to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees." *Baby Neal*, 43 F.3d at 57. As the Court recognized in *Williams I*, "typicality only requires that the harm complained of be common to the class." 183 F.R.D. at 439.

■■■■ In this case, plaintiff faces a dilemma. Recall that plaintiff chose to define the putative class as to those individuals to whom defendant sent debt-collection "letters or other communications substantially in the form of the letters." Mem. of Law in Supp. of Pl.'s Renewed Mot. for Class Certification at 4. To proceed as a class representative, plaintiff must emphasize the debt-collection practice common to plaintiff's claims and the putative class members' claims, i.e., defendant's course of conduct in sending the offending form letters.

■■■ On the other hand, to satisfy the causation requirement for maintaining a private right of action under the UTPCPL, plaintiff must show that she suffered an ascertainable loss of money or property as the result of some prohibited conduct in which defendant engaged. Plaintiff does not claim that defendant's mailing of form letters caused her injury. Instead, she asserts that it was the numerous telephone calls she received from defendant at her home and workplace that caused her to suffer a monetary loss. Thus, the commonality requirement is satisfied by pointing to the form letters that defendant sent to plaintiff and other proposed members. The typicality requirement, however, fails because plaintiff's alleged injury is derived from the telephone calls that she received from defendant, and not from the form letters that defendant sent to her and the proposed class members.[12]

■■■■ Nor may a showing of injury be inferred merely from the fact that defendant sent debt-collection form letters to class members. Rather, the UTPCPL, unlike its federal counterpart,[13] requires that individuals must have suffered loss of money or property as a result of defendant's prohibited conduct for liability to attach.[14]

Fed.R.Civ.P. 23(b).

**12.** Even if plaintiff defined the class by telephone calls *or* telephone calls and form letters, she would still encounter difficulties in achieving class certification. As the Third Circuit has recognized, "a variety of oral representations [creates] a circumstance which might present a greater obstacle to class treatment [under typicality]." *Eisenberg*, 766 F.2d at 786–87. Unless plaintiff can show that defendant's oral communications for debt-collection purposes were uniform, such that defendant's callers strictly adhered to a scripted format for the telephone conversations, she cannot establish that her claims arise from the same course of conduct as the proposed class members' claims, thereby forfeiting Rule 23's typicality requirement. *See In re Prudential*, 148 F.3d at 310 n. 48; *see also Johnston*, 265 F.3d at 191 (finding that the predominance requirement for class certification was not met in a private securities fraud action because "the content of the individual representations ... were not standard or scripted but were oral and varied.").

**13.** The federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, was created, in part, "to eliminate abusive debt collection prac-

tices by debt collectors ... [and] to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Unlike Pennsylvania's UTPCPL, the FDCPA provides for statutory damages. 15 U.S.C. § 1692k(a)(2)(A); *see also Weiss v. Regal Collections*, 385 F.3d 337, 340 n. 3 (3d Cir.2004) ("The FDCPA sets a $1000 statutory limit on damages awarded in a private action[ ]. The statute also limits the amount of damages recoverable in a class action to the lesser of $500,000 or 1 per centum of the net worth of the debt collector.") (internal quotations and citations omitted); *O'Brien v. Valley Forge Specialized Educ. Servs.*, No. Civ. A. 03–CV–5695, 2004 WL 2580773, *4 n. 4 (E.D.Pa.2004) ("A successful plaintiff in an FDCPA action can also recover statutory damages up to $1000 for each violation, attorney's fees, and costs.").

**14.** Testimony from certain proposed class members illustrates the disconnect between plaintiff's claims and the proposed class members' claims. Mary Ann Wilson and Virginia L. Trumbell, two potential class members, were deposed. Ms. Wilson testified that she would like damages because of defendant's harassing telephone calls, but she did not mention seeking damages for any form letters that defendant sent. Dep. of Mary

Finally, any claim that defendant's "practice or course of conduct" may be generically defined as "debt-collection practices," as opposed to the more narrowly defined practices of either debt-collection letters or debt-collection telephone calls, is misplaced. These two debt-collection practices vary greatly. Form letters are a less intrusive means of debt collection and provide, on their face, uniformity as to what messages defendant was conveying to all individuals who received the letter. On the other hand, defendant's debt-collection telephone calls are a highly personalized and intrusive means of debt collection and entail individualized communications that differ among class members.

■■■■ Under these circumstances, plaintiff's claims are "markedly different" from those of the proposed class, having not arisen, as far as damages are concerned, from the "same practice or course of conduct" by defendant. *See Newton,* 259 F.3d at 185. Because plaintiff cannot meet the typicality requisite of Rule 23(a), class certification must be denied.[15]

Ann Wilson, Feb. 3, 1998, Tr. at 81–88. Another proposed class member, Virginia L. Trumbell, used to call defendant about her loans and often asked defendant to call her back. Dep. of Virginia L. Trumbull, Feb. 3, 1998, Tr. at 113–16, 173–76. Ms. Trumbell's grievances stem from poor workmanship in her home repairs, and not the form letters. *Id.*

Although proposed class members may have suffered an ascertainable loss of money or property because of defendant's debt-collection telephone calls, plaintiff limited the scope of the proposed class to include only those individuals to whom defendant sent form letters. Therefore, the Court cannot look to purported injuries from defendant's debt-collection telephone calls to satisfy the typicality requirement.

**15.** Because plaintiff cannot satisfy Rule 23(a)'s typicality requirement, the Court need not delve into the remaining threshold requirements under Rule 23(a) or the more stringent requirements under Rule 23(b). Although plaintiff can most likely satisfy Rule 23(a)'s numerosity requirement, having ascertained the names of 174 proposed class members whom defendant sent allegedly improper debt-collection form letters, serious questions surround whether Rule 23(a)'s adequacy of representation requirement can be satisfied.

## III. CONCLUSION

For the reasons set forth above, the Court denies plaintiff's renewed motion for class certification.

Two criteria must be met to satisfy Rule 23's adequacy requirement: (1) The plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (2) the plaintiff must not have interests antagonistic to those of the class. *Weiss v. York Hosp.,* 745 F.2d 786, 811 (3d Cir.1984). "The inquiry that a court should make regarding the adequacy of representation requisite of Rule 23(a)(4) is to determine that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Hassine,* 846 F.2d at 179.

Plaintiff's counsel has experience in litigating class actions, and the Court does not doubt that counsel would suitably represent a class. *See Williams I,* 183 F.R.D. at 428. What is troublesome, however, is that a conflict exists between the damages of plaintiff and of the putative class members. While plaintiff is seeking damages resulting from defendant's telephone calls, the proposed class's damages arise from the substance and/or manner of delivery of defendant's form letters. Counsel's representation would necessarily be affected by the conflict of interest between the plaintiff's and the class members's claims. Hence, this requirement would be difficult to satisfy.