Andrew T. THOMASSON, et al., Plaintiff,

v.

**GC SERVICES LIMITED PARTNER-SHIP, and Does 1 though 25, inclusive, Defendants.**

**Civil No. 05cv0940 JAH (CAB).**

United States District Court,
S.D. California.

Feb. 8, 2011.

Michelle Linnette Van Dyke, Steven M. Shewry, Shewry and Van Dyke, LLP, Robert E. Schroth, Jr., Schroth & Schroth, San Diego, CA, Robert L. Arleo, Law Offices of Robert L. Arleo, New York, NY, for Plaintiff.

John H. L'Estrange, Jr., Wright and L'Estrange, Tim Jude Vanden Heuvel, R. Gaylord Smith, Lewis Brisbois Bisgaard and Smith, San Diego, CA, Thomas E. Gilbertsen, Venable LLP, Washington, DC, for Defendants.

### ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [Doc. No. 261]

JOHN A. HOUSTON, District Judge.

Plaintiffs move to certify this action brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"). Defendants oppose the motion.

### BACKGROUND

Plaintiffs Andrew T. Thomasson and Rebecca J. Thomasson[1] originally filed their complaint on May 4, 2005, alleging violations

---

1. The original complaint named Andrew T. Thomasson and Mary Jo Mial as plaintiffs. The FAC terminated Mary Jo Mial and added Rebecca J. Thomasson, MacDonald P. Taylor and Chenoa R. Taylor as plaintiffs. See FAC (Doc. No. 6) Pursuant to the parties' stipulation, Judge Burns terminated Chenoa Taylor and MacDonald Taylor as plaintiffs. See Doc. No. 50.

of the FDCPA and California's Invasion of Privacy Act ("CIPA") and filed a First Amended Complaint ("FAC") on August 17, 2005. The action was originally assigned to the Honorable Larry A. Burns, United States District Judge.

Plaintiffs filed a motion for class certification on June 30, 2006, and a motion for leave to file a second amended complaint on July 5, 2010, which Judge Burns denied as untimely. Defendant filed a motion for summary judgment on October 26, 2006. Upon finding Plaintiffs failed to produce sufficient evidence to raise a triable issue of material fact as to whether Defendant violated the FDCPA, Judge Burns granted Defendant's motion as to the FDCPA and the CIPA claims. Plaintiffs' motion for class certification was denied as moot.

Plaintiffs appealed the order and the Ninth Circuit affirmed in part and reversed in part. The Ninth Circuit reversed Judge Burns' grant of summary judgment as to the FDCPA claim and affirmed the grant of summary judgment as to the CIPA claims.[2] A hearing was held to spread the mandate, at which this Court directed the parties to contact the magistrate judge's chambers to schedule a case management conference. After the case management conference, Plaintiffs moved for leave to amend the complaint. Finding Plaintiff failed to demonstrate diligence in amending the complaint and therefore failed to satisfy the "good cause" standard, this Court denied the motion.

Thereafter, Plaintiffs filed the pending motion to certify the class. Defendant filed an opposition, and Plaintiffs filed. The parties filed numerous documents under seal pursuant to the protective order issued in this case. Defendant filed objections to Plaintiffs' declarations to which Plaintiffs responded. After a thorough review of the parties' submissions and oral argument at the hearing, and for the reasons set forth below, the

Court GRANTS Plaintiffs' motion for class certification.

## DISCUSSION

Plaintiffs seek to certify the following class:

> Plaintiffs' Andrew T. Thomasson, Rebecca J. Thomasson, and all other 412 persons identified by GC Services as persons whose telephone communications with a debt collector employed by Defendant GC Services, concerning the collection of a debt, alleged or otherwise, that was monitored by GC Services without the consent of each party to the communication.

### I. Legal Standard

■ Whether to grant class certification is within the discretion of the court. *Montgomery v. Rumsfeld,* 572 F.2d 250, 255 (9th Cir. 1978). A cause of action may proceed as a class action if a plaintiff meets the threshold requirements of Rule 23(a) of the Federal Rules of Civil Procedure: numerosity, commonality, typicality, and adequacy of representation. FED.R.CIV.P. 23(a). In addition, a party seeking class certification must meet one of the three criteria listed in Rule 23(b). Pursuant to Rule 23(b)(3) a party may maintain a class action if the court finds that the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy.

### II. Analysis

#### A. "Threshold" Issues

#### 1. Certification of Claims Based upon Oral Communications

Defendant argues claims based on varying oral communications cannot be certified for class treatment based upon decisional authority.[3] Defendant maintains Plaintiffs seek to certify certain individuals that were sub-

---

**2.** Thereafter, Judge Burns recused from the case and it was assigned to this Court.

**3.** In support, Defendants cite to *Clark v. Watchie,* 513 F.2d 994, 999 (9th Cir.1975), *Jones v.*

*E\*Trade Mortg. Corp.,* 2006 WL 581257, \*3 (S.D.Cal.), *Williams v. Empire Funding Corp.,* 227 F.R.D. 362, 373 n. 12 (E.D.Pa.2005).

jected to alleged deviations in Defendant's policy to give the disclosure/advisement at issue. Plaintiffs argue, unlike the cases cited by Defendant, no "content determinative" situation exists here. Plaintiffs maintain it is the uniform conduct of GC Services, not the content of the conversation that establishes the violation.

A review of the cases cited by Defendant in support of its argument demonstrates the various courts do not find, as a general proposition, that actions based upon oral communications cannot be certified, but find the particular oral communications alleged prevented the plaintiff from meeting the typicality or commonality requirement for certification.[4] As such, the appropriateness of class certification for claims based upon oral communications are addressed in the discussion of the Rule 23 requirements below.

**2. Precise and Ascertainable Definition**

█ Defendant argues the proposed class fails the threshold test of a precise and ascertainable definition, because it inappropriately incorporates merits issues. Defendant contends there is no way to objectively identify the members of the proposed class without extensive "mini-trials" for each prospective member. Defendant maintains, in order to qualify for class membership, each member of the list of 412 people must pass a multipart class member test to determine if: (1) the individual is a "consumer" for purposes of the FDCPA; (2) whether GC Services was acting as a third-party "debt collector" for purposes of the FDCPA; (3) whether the conversation with GC Services constitutes a "communication concerning the collection of a debt" for purposes of the FDCPA; and (4) was the call monitored without consent. Defendant argues these factual issues could only be resolved from competing evidence.

Plaintiffs argue Defendant has a uniform policy to not provide the monitoring disclosure until after a consumer has disclosed their name, address, telephone number, birth date and driver's license number to Defendant's representative. It is this policy, they contend, not the content of the conversation that establishes the violation. Plaintiffs argue they have established the FDCPA was violated at the outset of any telephone conversation between Defendant and a consumer by gathering a consumer's personal information during the conversation prior to disclosing that the call might be monitored.

█ Rule 23 contains no explicit requirement regarding the class definition. However, many courts have held Rule 23 implicitly requires the class be adequately defined and clearly ascertainable. *See Lewis v. First American Title Ins. Co.*, 265 F.R.D. 536 (D.Idaho 2010); *Hanni v. American Airlines, Inc.*, 2010 WL 289297 (N.D.Cal.); *Quezada v. Loan Center of California, Inc.*, 2009 WL 5113506 (E.D.Cal.); *Sacora v. Thomas*, 2009 WL 4639635 (D.Or.); *Singleton v. Adick*, 2009 WL 3710717 (D.Ariz.); *Tchoboian v. Parking Concepts, Inc.*, 2009 WL 2169883 (C.D.Cal.) (Discussing whether the class is ascertainable as a factor to consider for numerosity); *Spencer v. Beavex, Inc.*, 2006 WL 6500597 (S.D.Cal.). "A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." *Moreno v. AutoZone, Inc.*, 251 F.R.D. 417, 421 (N.D.Cal.2008) (quoting *Bartold v. Glendale Federal Bank*, 81 Cal.App.4th 816, 828, 97 Cal.Rptr.2d 226 (2000)). "The Court must be able to determine class members without having to answer numerous fact-intensive questions." *Spencer v. Beavex, Inc.*, 2006 WL 6500597 (quoting *Whiteway v. FedEx Kinko's Office and Print Servs., Inc.*, 2006 WL 2642528 (N.D.Cal.)).

4. In *Clark*, the Ninth Circuit found a suit alleging violations of the Securities Exchange Act could not be maintained as a class action, because the Plaintiff failed to show the alleged misrepresentations or nondisclosures were common to the class. 513 F.2d at 1000. In *Jones*, Judge Whelan found the plaintiffs' claim for violation of TILA based upon oral statements differed from the proposed class and, therefore, the plaintiffs failed to meet the typicality requirement. In *Williams*, the district court found the plaintiff failed to demonstrate typicality when her claims were based upon oral communications and there were no allegations the proposed class members claims were based upon oral communications.

Plaintiffs' class definition may require a threshold inquiry to determine class membership. It clearly requires an individualized inquiry into the content of the telephone calls to determine whether the advisement was given and, if so, when it was given. However, this limited, basic inquiry does not make class certification "administratively infeasible." See *Spencer*, 2006 WL 6500597 ("[A] proposed class must be clearly defined so that it is administratively feasible for a court to determine whether a particular individual is a member"). Accordingly, the Court finds the class definition is adequately defined and clearly ascertainable.

## B. Rule 23(a) Criteria

### 1. Numerosity

■ Rule 23 requires that the class be "so numerous that joinder of all members is impracticable." FED.R.CIV.P. 23(a)(1). Plaintiff contends they meet the numerosity requirement because GC Services admits they monitored the telephone conversations of 412 persons, and produced approximately 2000 call monitoring sheets.[5] As discussed above, the Court finds class membership is objectively ascertainable. Based upon the list of 412 potential class members, the Court finds Plaintiffs meet the numerosity requirement.

### 2. Commonality

■ Questions of law or fact must be common to the class. See FED.R.CIV.P. 23(a)(2). Plaintiffs argue Defendant committed that same standardized conduct with each member of the putative class, namely, failing to advise the class members that the call might be monitored at the outset of the telephone conversation.

Defendant argues the common issue, whether Defendant's conduct of not making

the advisement to the consumers at the outset of calls constitutes false, deceptive and misleading means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of the FDCPA which requires an individualized inquiry of each person on the list to determine: (1) whether the individual's debt was a "consumer" debt; (2) whether Defendant called the consumer as a third-party debt collector or as an agent of the creditor; (3) whether the consumer was given notice the call could be monitored; (4) at what point in the call was the consumer given notice the call would be monitored; (5) whether the consumer "consented" to having the call monitored; (6) if the call was monitored, the consumer was not given notice, and the consumer did not consent to the monitoring, whether the call constituted a "communication in connection with the collection of any debt" for purposes of the FDCPA; (7) if the call was monitored, the consumer was given notice, and the consumer did not consent to the monitoring, whether the call to the point of the notice constituted a "communication in connection with the collection of any debt" for purposes of the FDCPA; and (8) if GC services did violate the FDCPA in a particular call, whether the bona fide error defense applies to that violation.

Defendant maintains counsel for Plaintiffs acknowledged the necessity of resolving numerous individual issues, as they identified a need to contact each person on the list, during discovery, to determine whether each was advised that the telephone conversations were monitored. Defendant further maintains the seventeen declarations submitted by Plaintiffs in support of their motion further evidences that individual issues predominate.[6] As such, Defendant argues, predominance and commonality are lacking.

---

5. Defendant objects to Plaintiffs' reference to the call sheets because the call sheets were not attached to the motion. Defendants, however do not challenge Plaintiffs' assertion that they obtained the list of 412 potential class members from the voluminous set of documents. Because Defendant does not dispute the pertinent information garnered from the documents, the Court OVERRULES the objection.

6. Defendant objects to the Court's consideration of the declarations on the basis they contain information that is irrelevant, statements that are speculative and conclusory, and a statement demonstrating the individual declarants viewed a confidential document in violation of the protective order in this case. Defendant further objects to Robert Schroth's declaration summarizing the contents of the declaration. Plaintiff argues they did not violate the protective order because the individuals who viewed the document already

Plaintiffs contend whether Defendant disclosed to consumers at the outset of a telephone call that their conversation might be monitored by a third person prior to seeking the consumer's personal information and whether this conduct violates the FDCPA is common to the class members and predominates over any potential individual issue. They maintain it is the uniform lack of disclosure, not the content of the conversation, that is relevant and this common issue predominates over the individual issues. They further maintain no mini trials are necessary to establish that Defendant was acting as a debt collector, the conversations were an attempt to collect a debt and the telephone conversations were communications as Defendant has already admitted these facts. To the extent class member testimony is needed, Plaintiffs assert that after the fifth or sixth class member testifies at trial, a jury could easily conclude that GC Services did not provide any monitoring advisement.

█ Commonality is construed liberally. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998). Defendant does not dispute the fact the list of 412 people consists of individuals whose calls with Defendant's representatives were monitored. The alleged violation at issue is the failure to disclose to each individual that the calls would be monitored at the outset of the telephone call. Although there are "divergent factual predicates", the common legal questions of whether Defendant violated the FDCPA when it failed to give the advisement satisfies the commonality requirement. See *id.* ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.").

### 3. Typicality

█ Typicality under subsection Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R.CIV.P. 23(a)(3). Plaintiffs argue they meet the typicality requirement because, as defined, each member of the class was subjected to the same FDCPA violations as the named Plaintiffs and all class members' claims arise from the same uniform conduct committed by GC Services.

Defendant argues Plaintiffs are not on the list of people they seek to certify, have not established they are members of a class of consumers whose calls with Defendant were monitored in a communication in connection with the collection of a debt and have barely presented enough evidence to raise a factual dispute about whether their calls with Defendant were monitored.[7] Defendant maintains, at a trial, resources will be devoted to resolving disputes about Plaintiffs and not the class.

Plaintiffs argue the substantial evidence demonstrates Plaintiffs calls were monitored and Defendant produced no evidence to rebut this evidence. They maintain, their claims are typical of the class.

█ "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1019. Plaintiffs allege Defendant has a policy of monitoring telephone calls with individuals without telling the individual the call may be monitored before obtaining personal information. While there is a dispute as to whether the named plaintiffs' calls were monitored, Plaintiffs tender evidence through declarations that several calls were moni-

had personal knowledge of its contents. The Court reviewed the declarations and other evidence submitted by Plaintiff, and relied on only the information it deemed relevant and pertinent to the issues presented by the present motion. The objections are OVERRULED.

7. Defendant objects to the statement contained in both Andrew Thomasson and Rebecca Thomasson's declaration that they believe their calls were monitored secretly as irrelevant and not within the declarant's personal knowledge.

Plaintiffs maintain the information was within their personal knowledge and is relevant. The objection is OVERRULED.

Defendant also objects to statements made by both Andrew and Rebecca Thomasson that they believe GC Services is making an effort to unearth salacious information about them. The statements are without foundation and are completely irrelevant to the issues presented by the pending motion. As such, the objection is SUSTAINED.

tored by Defendant. Defendant disputes whether the calls were monitored because Plaintiffs do not appear on the list of 412 persons. The Court may consider evidence which goes to the requirements of Rule 23 for purposes of determining the propriety of class certification. *See Hanon v. Datapro-ducts Corp.,* 976 F.2d 497(9th Cir.1992). Plaintiffs' declarations sufficiently demonstrate that their claims are similar to those of the class for class certification purposes. The plaintiffs claims arise from the same course of conduct that gives rise to the claims of the class members. *See Ballard v. Equifax Check Servs., Inc.,* 186 F.R.D. 589, 595 (E.D.Cal.1999). Plaintiffs, therefore, meet the typicality requirement.

### 4. Adequacy of Representation

██ To ensure due process requirements are met, "absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon,* 150 F.3d at 1020. There are two criteria used to evaluate whether this requirement is met: 1) does the named class representatives and their counsel have any conflicts of interest with other class members; and 2) will the named representatives and their counsel prosecute the action vigorously on behalf of the class. *Id.*

### a. Lawyers

Plaintiffs maintain their attorneys are appropriate candidates for class counsel. In support, they assert counsel is widely experienced in FDCPA litigation and point to Robert Arleo's previous experience as class counsel in a number of FDCPA lawsuits.[8] They further maintain the firm of Schroth & Schroth, which consists of Robert E. Schroth, Sr. and Robert E. Schroth, Jr., has served as class counsel in four class actions in the last three years and both attorneys have extensive experience in complex litigation.

Defendant argues Plaintiffs' counsel are not qualified to conduct this litigation based upon their conduct in these proceedings. Defendant maintains the attorneys have received numerous admonishments in this case arising from a pervasive pattern of disregard for litigation deadlines, responsibilities and standards of professional conduct, and point to Mr. Arleo's misconduct, including his argumentative and disrespectful manner when dealing with the Court.[9] In reply, Plaintiffs refer to their attorneys' declarations in which counsel attempts to explain the specific instances of the behavior referenced by Defendants. *See* Arleo Decl.

Although the Court is not convinced by counsel's explanation for his previous behavior including the assertion that other judges were biased and prejudiced against his clients, the Court finds counsel's previous behavior in this action does not present a conflict of interest with the class members or will prevent counsel from vigorously prosecuting the action. Additionally, the Court is mindful of its ongoing duty to examine the adequacy of representation throughout the litigation and will do so if any future conduct by counsel warrants such. *See Key v. Gillette Co.,* 782 F.2d 5, 6 (1st Cir.1986).

### b. Class Representatives

Plaintiffs maintain the named plaintiffs interests coincidence with those of the class because, like the class members, they seek statutory damages, costs and attorneys fees for Defendant's unlawful telephone monitoring practices. They further maintain there is no potential for conflict given the similar claims. Defendants argue the Thomassons are inadequate representative litigants because they have presented a series of ever-changing versions of the key facts in this

---

**8.** Defendant objects to Robert Arleo's statement, contained in his declaration, that he is the leading FDCPA plaintiffs attorney in the State of New York and he is recognized as a leading national FDCPA attorney as hearsay and lacking foundation. Plaintiffs maintain Arleo has personal knowledge of the information, but suggest the Court may disregard the information. Because there is sufficient information to determine Ar-

leo's experience with FDCPA cases without the information contained in the statement, the Court OVERRULES the objection as moot.

**9.** Defendant addresses conduct by Mr. Arleo that lead to Judge Burns's issuance of sanctions. The sanctions order, however, was reversed by the Ninth Circuit on appeal.

case which raises serious doubts about their credibility.

The Court finds that Plaintiffs sufficiently demonstrate their interests are consistent with the rest of the class. The Court is not convinced that minor variations in testimony raise serious doubts regarding the named plaintiffs' credibility or otherwise demonstrate a conflict with the class members. Accordingly, the Court finds the named plaintiffs will adequately represent the class.

The Court finds Plaintiffs meet the requirements of Rule 23(a).

## C. Rule 23(b)(3) Criteria

### 1. Predominance

 Plaintiffs maintain the predominating question of the litigation is whether Defendant's conduct in monitoring telephone conversations with consumers without first disclosing that fact violates the FDCPA and is the same for each class member. Plaintiffs contend any potential issues are ministerial. They further contend calculation of damages does not require an individual inquiry because they seek only statutory damages.

Defendant argues the putative class does not meet the predominance requirement of Rule 23(b)(3) which requires "more exacting standard" than Rule 23(a) and incorporates its commonality analysis.

 The predominance inquiry presumes the existence of common issues of fact or law have been established pursuant to commonality requirement of Rule 23(a)(2). *Hanlon,* 150 F.3d at 1022. However, meeting the commonality requirement is insufficient to fulfill the predominance requirement. *Id.* "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Id.*

The Court finds the common question of whether Defendant's alleged failure to provide the advisement at the outset of the telephone call for each class member violated the FDCPA meets the predominance requirement.

### 2. Superiority

 Plaintiffs argue a class action is superior to individual actions, because it provides an efficient and appropriate resolution to the controversy for many individuals who likely do not have the financial means or knowledge to pursue a matter on their own. They further argue prosecuting individual actions would not be an exercise in judicial economy.

Defendant argues Plaintiffs' unascertainable, fail-safe class definition and the myriad of individual issues it presents preclude any finding of superiority. Defendant maintains it would not preclude future class actions based on the same alleged conduct, because it captures only a small subset of persons whose calls with Defendant were monitored. Even if the Thomassons proposed list of 412 is certified, multiple FDCPA class actions based on the same conduct might still be filed in California and elsewhere.

Individuals are most likely unaware of their rights under the FDCPA. As such, the likelihood of individual claims is remote and class action is superior. Although there may be issues surrounding identification of class members, as discussed above, they are relatively minor and do not effect the ability to ascertain the class. Accordingly, the Court finds Plaintiffs meet the superiority prong of Rule 23(b), and therefore meets the Rule 23(b)(3) criteria for certification.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED Plaintiffs' motion for class certification is **GRANTED**. The class consists of

> Plaintiffs' Andrew T. Thomasson, Rebecca J. Thomasson, and all other 412 persons identified by GC Services as persons whose telephone communications with a debt collector employed by Defendant GC Services, concerning the collection of a debt, alleged or otherwise, that was monitored by GC Services without the consent of each party to the communication.